UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STEPHEN H. CLEVETT,<br><br>    Plaintiff,<br><br>v.<br><br>EQUITABLE RESOURCES, INC.,<br>and JOSEPH E. O'BRIEN,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)  **05-40020 FDS**<br>)<br>)<br>) |

## NOTICE OF REMOVAL

TO:  The Honorable Justices of the
United States District Court
District of Massachusetts
United States Courthouse
Harold D. Donahue Federal Bldg. and Courthouse
595 Main Street
Worcester, Massachusetts 01608

FILING FEE PAID:
RECEIPT # 401503
AMOUNT $ 150
BY DPTY CLK
DATE 1-31-05

Pursuant to 28 U.S.C. §§ 1441 and 1446, Equitable Resources, Inc. ("Equitable")

and Joseph E. O'Brien ("O'Brien") (collectively "Petitioners") hereby provide notice and

petition this Honorable Court for the removal of this action from the Worcester County

Superior Court of the Commonwealth of Massachusetts ("Worcester Superior Court") to

the United States District Court for the District of Massachusetts based on the following

facts:

     1.    On or about November 30, 2004, Plaintiff Stephen E. Clevett ("Clevett")

commenced a civil action in the Worcester Superior Court captioned  Stephen E. Clevett

v. Equitable Resources, Inc. and Joseph E. O'Brien, Civil Action No. 2004-02334B, by

filing a Complaint and Jury Demand ("Complaint") seeking substantial monetary damages from Petitioners.

2.    On or about December 29, 2004,  Equitable received by certified mail a copy of the Summons and Complaint in this matter which had previously been filed in Worcester Superior Court in Worcester, Massachusetts.

3.    On or about January 4, 2005, O'Brien received by hand a copy of the Summons and Complaint in this matter which had previously been filed in Worcester Superior Court in Worcester, Massachusetts.

3.    The following documents represent all processes, pleadings, and orders Petitioners have received to date:

      (a)    Summons to Petitioner Equitable;

      (b)    Summons to  Petitioner O'Brien; and

      (c)    Complaint.

Copies of the foregoing documents are attached hereto as Exhibit A.

4.    This action is an action in which this Court has original diversity jurisdiction under the provisions of 28 U.S.C. § 1332, in that:

      (a)    the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs;

      (b)    both Plaintiff, on the one hand, and Equitable, on the other hand, are citizens of different states.  Plaintiff is an individual residing in Ashland, Massachusetts.  Equitable is a Pennsylvania corporation with a principal place of business in Pittsburgh, Pennsylvania; and

      (c)    O'Brien, a Massachusetts resident, has been fraudulently joined to defeat diversity.  The joinder of O'Brien, the non-diverse party, has no reasonable basis

in law or fact; and removal is, therefore, warranted.  Mills v. Allegiance Healthcare

Corp., 178 F. Supp.2d 1, 4-5 (D. Mass. 2001) (motion to remand denied where resident

defendant had been fraudulently joined where plaintiff employee failed to state a cause of

action with a reasonable basis in law and fact against defendant distribution company).

     5.     With reference to the fraudulent joinder issue, Clevett's claims arise out of

the decision by his former employer to terminate his employment for cause, such that

pursuant to his Noncompete Agreement, he did not receive severance pay.[1]  In order to

destroy diversity, Clevett has brought various tort claims against O'Brien (fraudulent

misrepresentation (Count IV),  negligent misrepresentation (Count VI), and tortious

interference (Count VII));  and a claim under Mass. Gen. Laws c. 93A, §§ 2, 11 for unfair

and deceptive business practices (Count X).[2]  With respect to the tort claims, under

Massachusetts law, a supervisor or officer of an employer, such as O'Brien, cannot be

personally liable for conduct committed in the course of his employment, unless the

plaintiff employee can show that the supervisor or officer, when acting, had a "spiteful,

malignant purpose, unrelated to the legitimate corporate interest" of the employer.

McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals, 880 F.

Supp. 900, 910 (D. Mass. 1995). See also Weber v. Community Teamwork, Inc., 434

Mass. 761, 782-783 (2001); Boothby v. Texon, Inc., 414 Mass. 468, 487 (1993);  Gram v.

Liberty Mutual Ins. Co., 384 Mass. 659, 663-665 (1981); Steranko v. Inforex, Inc., 5

Mass. App. Ct. 253, 273 (1977) ("This rule has particular force as applied to corporate

---

[1] The Noncompete Agreement, which is attached to the Complaint as Exhibit B and sets forth the termination and severance provisions at issue, is between Clevett and Equitable.  The term "Equitable" is defined therein to include Equitable Resources, Inc. and its subsidiaries.

[2] It is well settled in Massachusetts that disputes arising out of the employment relationship do not meet the trade or commerce requirement and are, therefore, excluded from the scope of Chapter 93A. Bolen v. Paragon Plastics, Inc., 754 F.Supp. 221, 227 (D.Mass.1990); Manning v. Zuckerman, 388 Mass. 8, 11 (1983).

officers, since their freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability."). Notably absent from the Complaint is any allegation (other than a conclusory reference to "actual malice" in paragraph 78) that O'Brien acted for any purpose other than a legitimate business purpose. Indeed, O'Brien was Clevett's supervisor, and evidence of Clevett's misconduct was brought to his attention. (Affidavit of Joseph E. O'Brien in Support of Notice of Removal (O'Brien Aff. at ¶¶ 3, 5-6.) O'Brien deliberated carefully with respect to Clevett's termination. He obtained additional evidence, and advice from counsel prior to terminating Clevett's employment. (Id. at ¶¶ 6-7.) As an officer of the corporation, O'Brien was the agent responsible for carrying out Equitable's decision that Clevett's employment should be terminated. O'Brien's action did not arise out of any personal malice toward Clevett; there was no ill will between Clevett and O'Brien; and O'Brien gained nothing personally as a result of the termination of Clevett's employment.[3] (Id. at ¶ 10.) Because Clevett has no reasonable basis in fact or law for his claims against O'Brien, O'Brien has been fraudulently joined to defeat diversity, and this action should be removed. E.g., Carey v. Board of Governors of the Kernwood Country Club, 337 F. Supp.2d 339, 342-343 (D. Mass. 2004) (court denied motion to remand because plaintiff's claims for wrongful death against the individual board members of defendant were barred by the workers' compensation statute); Mills v. Allegiance Healthcare Corp., 178 F. Supp.2d 1, 4-5. See also In re New England Mutual Life Ins. Co. Sales Practice Litigation, 324 F. Supp.2d 288, 298 (D. Mass. 2004).

---

[3] The only other allegations involving O'Brien concern statements allegedly made by O'Brien to Clevett about a possible consulting relationship between NORESCO and Clevett. There is no allegation that such statements were made by O'Brien outside the course of his employment with NORESCO and Equitable or other than for the benefit of NORESCO or Equitable.

6.    In his Complaint, Clevett seeks damages in the form of severance pay amounting to $195,000, among other things.

7.    This Notice of Removal is filed within thirty (30) days of service of the Complaint.

8.    All defendants in this action join in this Notice of Removal.

9.    A copy of this Notice of Removal addressed to the Worcester Superior Court and a separate Notice of the filing of the same will be served on Clevett's counsel, and will be filed, pursuant to 28 U.S.C. § 1447(d), with the Worcester Superior Court.

10.    Pursuant to Local Rule 81.1(a), Petitioners will request from the clerk of the Worcester Superior Court certified or attested copies of all records and proceedings in the state court, and certified or attested copies of all docket entries therein, including a copy of this Notice of Removal, and will file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, Petitioners Equitable Resources, Inc. and Joseph E. O'Brien hereby respectfully remove to this Court the above-captioned action pending in the Worcester County Superior Court of Massachusetts.

Respectfully submitted,

EQUITABLE RESOURCES, INC.
and JOSEPH E. O'BRIEN

By their attorneys,

Terence P. McCourt (BBO#555784)
Laurie J. Hurtt (BBO#634149)
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

DATED:  January 28, 2005

5

<u>CERTIFICATE OF SERVICE</u>

I, Terence P. McCourt, hereby certify that on the 28th day of January, 2005, I served by first class mail a copy of the above to the following counsel of record:

Timothy P. Wickstrom, Esq.
Tashjian, Simsarian & Wickstrom
370 Main Street
Worcester, MA 01608

Thomas F. Holt, Jr., Esq.
Steven P. Wright, Esq.
Kirkpatrick & Lockhart
75 State Street
Boston, MA 02109-1808


Terence P. McCourt

::ODMA\PCDOCS\BOS_XP\157317\1



# COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No.   04-2334

Stephen H. Clevett

)
)
)
)

**Plaintiff (s)**

)
)

v.

)

**SUMMONS**

Equitable Resources, Inc. and
Joseph E. O'Brien

)
)
)
)

**Defendant (s)**

)

\*   To the above-named Defendant:   Equitable Resources, Inc.

You are hereby summoned and required to serve upon................................................
..Timothy..P...Wickstrom...................................................................................
whose address is ..370.Main.Street,..Worcester,.MA.01608................................, plaintiff's attorney,
an answer to the complaint which is herewith served upon you, within 20 days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgement by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the SUPERIOR COURT
Department of the Trial Court at WORCESTER either before service upon plaintiff's
attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-
claim any claim which you may have against the plaintiff which arises out of the
transaction of occurrence that is the subject matter of the plaintiff's claim or you will
thereafter be barred from making such claim in any other action.

Witness, SUZANNE V. DEL VECCHIO, Esquire, at Worcester, the...22nd................
day of .........December...................................in the year of our Lord two thousand  and
four................  .

**Clerk**

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

\*   NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but
if you claim to have a defense, either you or your attorney must serve a copy of your written
answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior
Court, Room 21.

# COMMONWEALTH OF MASSACHUSETTS

*SERVED*
*1-4-2005*
*2 PM*

Worcester, ss.

Superior Court
Department of the Trial Court
of the Commonwealth
Civil Action

No. 04-2334

Stephen H. Clevett                                    )
                                                      )
                                                      )
                                                      )
                         Plaintiff (s)                )
                                                      )        **SUMMONS**
                    v.                                )
                                                      )
Equitable Resources, Inc. and                         )
Joseph E. O'Brien                                     )
                                                      )
                         Defendant (s)                )

To the above-named Defendant:    Joseph E. O'Brien

      You are hereby summoned and required to serve upon ....................................
....Timothy..P...Wickstrom..................................................................., plaintiff's attorney,
whose address is ..370..Main..Street,..Worcester,..MA..01608................................
an answer to the complaint which is herewith served upon you, within 20 days after
service of this summons upon you, exclusive of the day of service. If you fail to do so,
judgement by default will be taken against you for the relief demanded in the complaint.
You are also required to file your answer to the complaint in the SUPERIOR COURT
Department of the Trial Court at WORCESTER either before service upon plaintiff's
attorney or within a reasonable time thereafter.

      Unless otherwise provided by Rule 13 (a), your answer must state as a counter-
claim any claim which you may have against the plaintiff which arises out of the
transaction of occurrence that is the subject matter of the plaintiff's claim or you will
thereafter be barred from making such claim in any other action.

      Witness, SUZANNE V. DEL VECCHIO. Esquire, at Worcester, the......22nd..........
day of.....December........................................................in the year of our Lord two thousand and
.....2004.......................

A TRUE COPY ATTEST
DEPUTY SHERIFF
01-04-05

Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT —
CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE -- OTHER.

NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but
if you claim to have a defense, either you or your attorney must serve a copy of your written
answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPARTMENT

| | |
|---|---|
| STEPHEN H. CLEVETT, )<br><br>    Plaintiff     )<br><br>v.     )<br><br>EQUITABLE RESOURCES, INC., and )<br>JOSEPH E. O'BRIEN )<br><br>    Defendants. )<br> )| Civil Action No.<br>2004-02334B |

### COMPLAINT AND JURY DEMAND

Plaintiff, Stephen H. Clevett ("Clevett"), files this Complaint against Defendants,

Equitable Resources, Inc. ("EQT"), and Joseph E. O'Brien ("O'Brien"), alleging as follows:

#### Introduction

1.    This is a civil action arising out EQT's unlawful termination of Clevett's

employment, after fraudulently inducing Clevett to accept such employment, and without

"cause" as defined by the parties' agreement; and EQT's subsequent refusal to pay Clevett

severance and other monies owed to him pursuant to the parties' agreement.

#### Parties

2.    The plaintiff, Stephen H. Clevett, was an employee of EQT from August of 2001

to December 15, 2003. From March of 2002 until December 2003, Clevett worked as the Senior

Vice President of Energy Infrastructure for NORESCO, a wholly owned subsidiary of EQT.

3.    The defendant, Equitable Resources, Inc., is a corporation organized under the

laws of Delaware, with its primary place of business in Pittsburgh, Pennsylvania. EQT is an

integrated energy company that offers natural gas products and energy services to wholesale and

retail customers through three business segments: Equitable Utilities, Equitable Production, and

BOS-688944 v1 0516825-0901

NORESCO. NORESCO is a wholly owned subsidiary of EQT with a principal place of business at One Research Drive, Westborough, Massachusetts 01581.

4.  The defendant, Joseph E. O'Brien, is the President of NORESCO and a Vice President of EQT.

### Jurisdiction and Venue

5.  This Court has personal jurisdiction over the defendants pursuant to Mass. Gen. Laws ch. 223A, § 3, and subject matter jurisdiction over this matter pursuant to Mass. Gen. Laws ch. 218, § 19.

6.  Venue is proper in this Court pursuant to Mass. Gen. Laws ch. 223, §§ 2 and 8.

### Factual Background

7.  In August of 2001, EQT hired Clevett to work as a Vice President of Business Development out of NORESCO's branch office in Vienna, Virginia.

8.  As a condition of Clevett's employment, O'Brien, who was Clevett's supervisor, orally promised Clevett that he would be promoted to Senior Vice President of the Energy Infrastructure Division (the "EI Division"), by the end of December 2001.

9.  O'Brien informed Clevett that this proposed promotion would require Clevett to permanently move from Maryland to Massachusetts, and reassured Clevett that the EI Division was, and would continue to be, a valued part of EQT's business.

10.  Despite his promises, O'Brien and EQT did not formally offer Clevett the promised promotion until February 22, 2002.

- 2 -

11.     As a result of O'Brien's delay in effecting the promotion, in January 2002 Clevett was forced to re-enroll his daughter in school in Maryland in order to reserve a placement for the 2002-2003 school year.

12.     In reliance on O'Brien's promise of promotion and continued assurances that the EI Division was a valued part of the EQT's business, Clevett: (i) commuted between Maryland and Massachusetts on weekly basis from February 2002 to September 2003, (ii) made a significant deposit to have a new home constructed in Ashland, Massachusetts in February 2003; (iii) moved his family to Ashland in September 2003.

13.     Clevett was made aware of the promotion by way of a letter dated February 22, 2002, signed by the Director of Human Resources for NORESCO, Anne M. Naqi, a true and accurate copy of which is attached hereto as Exhibit A. In this letter, EQT offered Clevett a promotion to Senior Vice President of the EI Division. Clevett accepted the promotion, and signed and returned the letter to Ms. Naqi.

14.     The February 22, 2002 letter outlined the terms and benefits of Clevett's promotion and stated, inter alia, that Clevett would be reporting to NORESCO's President, O'Brien, that he would be responsible for identifying, developing, and closing projects from the company's office in Westborough Massachusetts. Further, the letter provided that Clevett would receive: (i) $195,000 per year; (ii) twenty (20) days of vacation per year; (iii) the right to participate in the company's short-term and long-term incentive plans including stock options; (iv) $500 monthly automobile stipend; (v) financial planning benefits of $2000 per year; (vi) a club membership stipend of $2000 per year; (vii) one additional year of base salary life insurance and enhanced long-term disability; and (viii) relocation assistance.

- 3 -

15.    In June of 2002 and May of 2003 Clevett received letters detailing his award of stock options. Clevett signed the letters and agreed to participate in the stock option plan.

16.    On October 19, 2002, Clevett and EQT entered into a contract entitled "Noncompete Agreement" which contained a limited covenant not to compete and provided that if EQT terminated Clevett for any reason other than "cause," as defined in the Noncompete Agreement, or if Clevett terminated his employment for "Good Reason," as defined in the Noncompete Agreement, then EQT would be obligated to provide Clevett with the following: (i) any payments he is entitled to under the company's severance plan; (ii) 12 months salary at the salary level in effect at the time of termination payable in one lump sum within 30 days of termination; (iii) 12 months of continued health benefits; and (iv) up to 12 months of outplacement assistance as needed.   A true and accurate copy of the Noncompete Agreement is attached hereto as Exhibit B.

17.    In August 2003, O'Brien notified Clevett that, in the future, he and Clevett would "jointly manage" the EI Division as the group was not meeting its goals for the year.  In the reorganization of the group, Clevett was to manage business development duties only, while O'Brien would manage all construction activities.  O'Brien stated at the meeting that the group's operations and maintenance function "basically ran itself."  Prior to this date, Clevett had spent a significant amount of his time managing both construction and operations and maintenance activities because each area was critical to NORESCO.  Specifically, A major project in construction was experiencing difficulties and Clevett was managing the sales process of a significant troubled international assets held by NORESCO.  In sum, O'Brien's activities amounted to a diminution of Clevett's duties, and therefore provided Clevett with the opportunity to terminate the Noncompete Agreement for "Good Reason."

- 4 -

18.     In August 2003, O'Brien also notified Clevett that NORESCO had decided that the EI Division required only two sales personnel to meet its goals of $50 million in construction revenues for 2003. This staffing strategy was formulated without any input or guidance from Clevett and was in contradiction to the business plan that Clevett had prepared and presented to O'Brien in March 2003.

19.     In November of 2003, O'Brien informed Clevett that he and EQT were seriously considering terminating what O'Brien, quoting David Porges – EQT's Chief Financial Officer – referred to for the first time as the "EI experiment." Later that month O'Brien informed Clevett that he and EQT had decided to terminate all business development activities associated with the EI Division.

20.     On December 3, 2003, O'Brien ordered Clevett to terminate the employment of all of the EI Division's business development personnel and informed Clevett that he would be employed until the end of January as part of the transition group.

21.     On December 9, 2003, less than two months before Clevett was scheduled to be terminated with full severance pay and benefits, O'Brien called Clevett into a conference room and told him to pack his things and leave the building.

22.     On December 15, 2003, O'Brien sent a termination letter to Clevett (the "termination letter"), which provided in pertinent part as follows:

> As you know, your position with NORESCO was going to be eliminated in the near future, which would have resulted in the termination of your employment at that time. In the meantime, however, we have learned that you have been engaging in misconduct, which among other things, violates material provisions of the Noncompete Agreement between you and Equitable Resources, Inc. and also breaches the duty of loyalty owed to the Company. Hence, be advised that your employment with NORESCO is being terminated for cause as defined in paragraph 1 of the Noncompete Agreement, effective today.

- 5 -

A true and accurate copy of the termination letter is attached hereto as Exhibit C.

23.     The termination letter failed to explain what actions constituted Clevett's supposed "misconduct" or what actions amounted to "cause' as defined by the Noncompete Agreement. As of today, neither O'Brien nor EQT has clarified the specific reasons for Clevett's termination.

24.     On December 19, or less than one week after the termination letter was sent to Clevett, O'Brien requested that Clevett meet with O'Brien and representatives of the City of Colton, California ("Colton"), to discuss an ongoing project that EQT was performing for Colton (the "Colton project").

25.     On December 24, 2003, O'Brien and Clevett met to discuss the possibility of EQT retaining Clevett as a consultant for the Colton project. At this meeting O'Brien proposed that Clevett enter into a consulting agreement to work on the Colton project through May or June of 2004. Clevett responded that he would be willing to enter into such an agreement but requested that EQT resolve the issues related to his severance pay due under the Noncompete Agreement. In response, O'Brien replied that "everything was on the table."

26.     On Tuesday, January 20, 2004, at approximately noon, Clevett received an e-mail from O'Brien that failed to mention the issue of Clevett's severance pay, and stated NORESCO would not enter into a long-term consulting agreement at that time. O'Brien offered, however, to pay Clevett's expenses and an hourly wage if Clevett would attend meetings in Colton on January 21 – 23, 2004 that O'Brien could not attend.

27.     At approximately 6:00 p.m. on the same day, Clevett responded by e-mail and agreed to participate in the meetings, without a long-term consulting agreement or resolution of his severance pay, subject to the conditions that (i) his participation at the meeting did not waive

- 6 -

any of his rights to seek severance; and (ii) that NORESCO pay him expenses plus $2,500 per diem for the two and one-half-day trip.

28.     O'Brien did not respond to Clevett until approximately 7:30 p.m. on January 21, which was after Clevett had already departed for California in order to arrive for the initial meeting with representatives of Colton at mid-day on January 21, 2004. O'Brien's e-mail stated that he did not agree to Clevett's terms and that Clevett would not be receiving any compensation or expense recovery for his trip, nor could Clevett represent NORESCO at the meeting.

29.     On January 30, 2004, despite his rejection of Clevett's terms, O'Brien e-mailed Clevett asking for details regarding the meeting with Colton. Clevett responded to O'Brien's e-mail with a lengthy description of the meeting, including a detailed overview, a "capital rack-up," and a report on the analysis methodology employed by the City of Colton's partner on the Colton project.

30.     As of February 25, Clevett had not received a reply from O'Brien, so Clevett sent an invoice for $8,104.49 which included all of his expenses from the trip to Colton plus $2,500 per diem.

31.     To date, Clevett has not been paid for his meetings with Colton and has not been paid any severance or stock options owed by EQT.

## COUNT I

### (Breach of Contract – EQT)

32.     Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 31 above, as if each were fully set forth here in its entirety.

- 7 -

33.     Clevett entered into a contract with EQT as described above, and Clevett fully performed his obligations under this contract.

34.     EQT, by its actions described above, breached its contract with Clevett by terminating Clevett's employment without cause, and failing to pay Clevett the compensation he is owed for termination without cause under the contract.

35.     As a result of EQT's breach of its contractual obligations, Clevett has suffered substantial damages in an amount to be determined by the Court in these proceedings.

## COUNT II

### (Breach of Covenant of Good Faith and Fair Dealing – EQT)

36.     Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 35, above, as if each were fully set forth here in its entirety.

37.     Clevett entered into a contract with EQT as described above, and Clevett fully performed his obligations under that contract in good faith.

38.     EQT owed Clevett a duty of good faith and fair dealing in the performance of the contract.

39.     EQT, by their actions described above, breached the covenant of good faith and fair dealing with Clevett, by terminating Clevett's employment without cause, asserting in bad faith a pretextual basis for Clevett's termination, and refusing to pay Clevett the compensation he is owed under the contract.

40.     As a result of EQT's breach of the covenant of good faith and fair dealing within the contract, Clevett has suffered substantial damages in an amount to be determined by the Court in these proceedings.

- 8 -

## COUNT III

(Fraudulent Misrepresentation – EQT)

41.    Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 40 above, as if each were fully set forth here in its entirety.

42.    EQT and O'Brien intentionally misrepresented to Clevett that the EI Division of NORESCO was a valued part of EQT's business and would continue its operations indefinitely when, in fact, EQT and O'Brien knew that the EI Division was temporary and experimental.

43.    EQT and O'Brien made this misrepresentation with intention of inducing Clevett to accept a management position within the EI Division and to relocate his family to Massachusetts.

44.    Clevett acted upon EQT and O'Brien's misrepresentations by commuting from Maryland to Massachusetts on a weekly basis for 19 months, by incurring substantial un-reimbursed costs, by purchasing land and causing a house to be built in Ashland, Massachusetts, and by moving himself and his family to Massachusetts.

45.    Within 3 months of Clevett's move to Massachusetts, EQT and O'Brien dismantled the "EI experiment" and terminated Clevett's employment.

46.    On December 24, 2003, O'Brien intentionally misrepresented his intention to negotiate the payment of compensation owed to Clevett for termination without cause, and his intention to offer Clevett a long-term consulting agreement, and to pay Clevett an hourly fee, with the purpose of inducing Clevett to attend meetings with representatives of Colton in order to secure future work on the Colton project.

- 9 -

47.    Clevett acted upon O'Brien's misrepresentation by flying to California at his own expense, Meeting with other representatives of Colton over the course of three days, and providing O'Brien with detailed and valuable information derived from the meeting.

48.    O'Brien has failed to provide Clevett with any compensation for attending the meeting in California, and has refused to communicate with Clevett regarding a consulting agreement or payment of the compensation Clevett is owed.

49.    Clevett has suffered substantial damages directly related to EQT's misrepresentations in an amount to be determined by the Court in these proceedings.

## COUNT IV

### (Fraudulent Misrepresentation – O'Brien)

50.    Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 49, above, as if each were fully set forth here in its entirety.

51.    O'Brien intentionally misrepresented to Clevett that the EI Division of NORESCO was a valued part of EQT's business and would continue its operations indefinitely when, in fact, O'Brien knew that the EI Division was temporary and experimental.

52.    O'Brien made this misrepresentation with intention of inducing Clevett to accept a management position within the EI Division.

53.    Clevett acted upon O'Brien's misrepresentations by commuting from Maryland to Massachusetts on a weekly basis for 19 months, by purchasing land and causing a house to be built in Ashland, Massachusetts, and by moving himself and his family to Massachusetts.

54.    Within 3 months of Clevett's move to Massachusetts, EQT and O'Brien dismantled the "EI experiment" and terminated Clevett's employment.

- 10 -

55. On December 24, 2003, O'Brien intentionally misrepresented his intention to negotiate the payment of compensation owed to Clevett for termination without cause, and his intention to offer Clevett a long-tem consulting agreement, and to pay Clevett an hourly fee, with the purpose of inducing Clevett to attend meetings with representatives of Colton in order to secure future work for NORESCO on the Colton project.

56. Clevett acted upon O'Brien's misrepresentation by flying to California at his own expense, meeting with representatives of Colton over the course of three days, and providing O'Brien with detailed and valuable information derived from the meetings.

57. O'Brien has failed to provide Clevett with any compensation for attending the meeting in California, and has refused to communicate with Clevett regarding a consulting agreement or payment of the compensation Clevett is owed.

58. Clevett has suffered substantial damages directly related to O'Brien's misrepresentations in an amount to be determined by the Court in these proceedings.

## COUNT V

### (Negligent Misrepresentation – EQT)

59. Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 58, above, as if each were fully set forth here in its entirety.

60. EQT and O'Brien negligently misrepresented to Clevett that the EI Division of NORESCO was a valued part of EQT's business and would continue its operations indefinitely when, in fact, EQT and O'Brien knew that the EI Division was temporary and experimental.

61. Clevett acted upon EQT and O'Brien's misrepresentations by commuting from Maryland to Massachusetts on a weekly basis for 19 months, by purchasing land and causing a

- 11 -

house to be built in Ashland, Massachusetts, and by moving himself and his family to Massachusetts.

62.    Within 3 months of Clevett's move to Massachusetts, EQT and O'Brien dismantled the "EI experiment" and terminated Clevett's employment.

63.    On December 24, 2003, O'Brien negligently misrepresented his intention to negotiate the payment of compensation owed to Clevett for termination without cause, and his intention to offer Clevett a long-tem consulting agreement, and to pay Clevett an hourly fee.

64.    Clevett acted upon O'Brien's misrepresentation by flying to California at his own expense, meeting with representatives of Colton over the course of three days, and providing O'Brien with detailed and valuable information derived from the meeting.

65.    O'Brien has failed to provide Clevett with any compensation for attending the meeting in California, and has refused to communicate with Clevett regarding a consulting agreement or payment of the compensation Clevett is owed.

66.    Clevett has suffered substantial damages directly related to EQT's misrepresentations in an amount to be determined by the Court in these proceedings.

## COUNT VI

### (Negligent Misrepresentation – O'Brien)

67.    Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 66, above, as if each were fully set forth here in its entirety.

68.    O'Brien negligently misrepresented to Clevett that the EI Division of NORESCO was a valued part of EQT's business and would continue its operations indefinitely when, in fact, O'Brien knew that the EI Division was temporary and experimental.

- 12 -

69.    Clevett acted upon O'Brien's misrepresentations by commuting from Maryland to Massachusetts on a weekly basis for 19 months, incurring un-reimbursed relocation costs, by purchasing land and causing a house to be built in Ashland, Massachusetts, and by moving himself and his family to Massachusetts.

70.    Within 3 months of Clevett's move to Massachusetts, EQT and O'Brien dismantled the "EI experiment" and terminated Clevett's employment.

71.    On December 24, 2003, O'Brien negligently misrepresented his intention to negotiate the payment of compensation owed to Clevett for termination without cause, and his intention to offer Clevett a long-term consulting agreement, and to pay Clevett an hourly fee.

72.    Clevett acted upon O'Brien's misrepresentation by flying to California at his own expense, meeting with representatives of Colton over the course of two days, and providing O'Brien with detailed and valuable information derived from the meeting.

73.    O'Brien has failed to provide Clevett with any compensation for attending the meeting in California, and has refused to communicate with Clevett regarding a consulting agreement or payment of the compensation Clevett is owed.

74.    Clevett has suffered substantial damages directly related to O'Brien's misrepresentations in an amount to be determined by the Court in these proceedings.

## COUNT VII

### (Tortious Interference With Contract – O'Brien)

75.    Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 74, above, as if each were fully set forth here in its entirety.

- 13 -

76. Clevett entered into a contract with EQT as described above, and Clevett fully performed his obligations under this contract.

77. O'Brien knowingly induced EQT to breach its contract with Clevett by terminating his employment without cause by, inter alia, (a) misrepresenting Clevett's performance for NORESCO; (b) declining to permit Clevett to adequately staff the sales force to meet the EI Division's construction revenue goals; and (c) failing to pay Clevett the compensation owed to him under the contract.

78. O'Brien acted out of malevolence and actual malice in inducing EQT to breach its contract with Clevett.

79. Clevett has suffered substantial damages as a result of O'Brien's tortious interference with his contract in an amount to be determined by the Court in these proceedings.

## COUNT VIII

### (Civil Conspiracy – EQT and O'Brien)

80. Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 79, above, as if each were fully set forth here in its entirety.

81. O'Brien and other employees of EQT formed an agreement to intentionally misrepresent the value and longevity of the EI Division of NORESCO to fraudulently induce Clevett to accept a management position within the department.

82. O'Brien and other employees of EQT made such misrepresentations to Clevett and succeeded in inducing Clevett to rely upon them.

83. O'Brien and EQT dismantled the EI division shortly after Clevett moved to Massachusetts to manage the division.

- 14 -

84. Clevett has suffered substantial damages directly related to the conspiracy between O'Brien and others in an amount to be determined by the Court in these proceedings.

## COUNT IX

### (Violation of M.G.L. c. 93A, §§2, 11 – EQT)

85. Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 84, above, as if each were fully set forth here in its entirety.

86. Clevett and EQT were at all times relevant hereto engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§2, 11.

87. The conduct of EQT, as described above, in particular the deceptive inducement to secure Clevett's relocation and his managerial services, the subsequent refusal to pay Clevett compensation resulting from his termination without cause, and the deceptive inducement to secure Clevett's consulting services after his termination, constitute unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2, 11. Said acts, conduct, omissions and refusals were willingly and knowingly carried out by EQT in violation of M.G.L. c. 93A.

88. EQT's actions occurred primarily and substantially within the Commonwealth of Massachusetts.

89. As a direct and proximate result of the unfair and deceptive acts or practices of EQT, Clevett has suffered substantial damages in an amount to be determined by the Court in these proceedings.

## COUNT X

### (Violation of M.G.L. c. 93A, §§2, 11 – O'Brien)

90. Clevett hereby reasserts and incorporates by reference the allegations contained in paragraphs 1 through 89, above, as if each were fully set forth here in its entirety.

- 15 -

91.    Clevett and O'Brien were at all times relevant hereto engaged in trade or commerce within the meaning of M.G.L. c. 93A, §§2, 11.

92.    The conduct of O'Brien, as described above, in particular the deceptive inducement to secure Clevett's relocation and his managerial services, the subsequent refusal to pay Clevett compensation resulting from his termination without cause, and the deceptive inducement to secure Clevett's consulting services after his termination, constitute unfair and deceptive acts or practices in violation of M.G.L. c. 93A, §§2, 11.  Said acts, conduct, omissions and refusals were willingly and knowingly carried out by EQT in violation of M.G.L. c. 93A.

93.    O'Brien's actions occurred primarily and substantially within the Commonwealth of Massachusetts.

94.    As a direct and proximate result of the unfair and deceptive acts or practices of O'Brien, Clevett has suffered substantial damages in an amount to be determined by the Court in these proceedings.

## PRAYER FOR RELIEF

**WHEREFORE**, Clevett respectfully requests the following relief:

(1)     That the Court enter judgment in favor of Clevett against EQT on Counts I, II, III, V and VIII, and against O'Brien on Counts IV, VI, VII and VIII in an amount to be determined by the Court, plus costs and interest;

(2)     That the Court find that EQT and O'Brien's violations of Chapter 93A under Counts IX and X were willful and knowing, and thereby treble any damages awarded Clevett, and award Clevett his reasonable attorneys' fees; and

(3)     That the Court grant Clevett such further relief as the Court may deem just and proper, including costs and attorneys' fees.

### PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Respectfully submitted,

STEPHEN H. CLEVETT

By his attorneys,

Timothy P. Wickstrom (BBO # 000000)
Tashjian, Simsarian & Wickstrom, LLP
370 Main Street
Worcester, MA  01608
(508) 756-1578

Thomas F. Holt, Jr. (BBO # 238830)
Steven P. Wright (BBO # 648575)
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

- 17 -

# EXHIBIT A



**N O R E S C O**
*Your energy solutions partner.*

February 22, 2002

Mr. Stephen H. Clevett
15705 Cranberry Lane
Silver Spring, MD. 20906

Subject:  Promotion

Dear Stephen:

We would like to offer you the position of **Sr. Vice President – Energy Infrastructure**, effective March 4, 2002, reporting to Ted O'Brien, President.  This letter will serve to outline the terms and benefits of this promotional opportunity.

As Sr. Vice President – Energy Infrastructure located in Westboro, MA your primary responsibilities will be to:

* Identify, develop and close on-site power and energy infrastructure projects; primarily focused on the existing sales funnel in the attached documents
* Develop and implement a marketing plan  to support the development of additional energy infrastructure projects
* Assist with the development of operating procedures, manuals and marketing material
* Develop an M&A plan for the Energy Infrastructure Group
* Perform other duties as required by your manager

Terms and Benefits
* Base salary of $195,000 per year, paid on a biweekly basis;

* Twenty (20) days of vacation per year;

* Participation in the Company's Short Term Incentive Plan (STIP) at a level of 40%;

* Stock option award of 20,000 options under the 1999 Equitable Resources, Inc. Long Term Incentive Plan (LTIP), complete terms and conditions will be forwarded to you under separate cover by the Corporate Secretary;

* Monthly automobile stipend of $500;

* Financial planning benefit of $2,000, a club membership stipend of $2,000, one additional year of base salary life insurance and enhanced long-term disability are also included with this promotion;

* Mandatory execution of a Company non-compete agreement;

* Relocation assistance to include:
  * Lump sum payment of $10,781, which includes 90 days of expenses for home finding trips, final move expenses, and temporary living expenses.
  * Movement of your household goods to be scheduled and paid directly by the Company.
  * Miscellaneous relocation adjustment allowance in the amount of $16,250.

An EQUITABLE RESOURCES Company
1 Research Drive
Suite 400 C • Westborough, MA 01581
Phone: 508-614-1000 • Fax: 508-836-9688

- ° Reimbursement of the following closing costs related to the sale of your primary residence in Silver Spring, MD: realtor fees to a maximum of 6%; transfer taxes; mortgage repayment fees; deed preparation and mortgage satisfaction charges; attorney fees; survey fees; recording fees; radon testing; and, termite inspection. Any additional expenses in the sales contract including the payment of discount points, buyer's closing costs paid by the seller, etc., are not reimbursed by the Company.
- • Relocation payments will be grossed up for tax purposes.

Stephen, we hope that these terms and benefits meet with your approval. If you have any questions please contact me. A formal acceptance of this offer of promotion would be appreciated. In this regard, I have enclosed two (2) original copies of this document for your review and acceptance. If you accept and agree with the terms outlined, please sign both original copies and return one (1) of the original copies to me.

Sincerely,

*Anne M. Naqi*

Anne M. Naqi
Director, Human Resources

cc:     Personnel Files

---

I am in agreement with the terms of this promotional opportunity as outlined in this letter dated February 22, 2002.

*Stephen Clevett*                                          02.24.02

Stephen Clevett                                           Date

# EXHIBIT B

NONCOMPETE AGREEMENT

This Agreement is made as of _Oct 9_____, 2002 by and between Equitable Resources, Inc., a Pennsylvania corporation (Equitable Resources, Inc. and its subsidiaries are hereinafter collectively referred to as the "Company"), and Stephen H. Clevett (the "Employee").

WITNESSETH:

WHEREAS, in order to protect the business and goodwill of the Company, the Company desires to obtain certain non-competition covenants from the Employee and the Employee desires to agree to such covenants in exchange for the Company's agreement to pay certain severance benefits in the event that the Employee's employment with the Company is terminated in certain events; and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and intending to be legally bound hereby, the parties hereto agree as follows:

1.     If the employment of the Employee with the Company is terminated by the Company for any reason other than Cause (as defined below) or if the Employee terminates his or her employment with the Company for Good Reason (as defined below), the Company shall pay the Employee, from the date of termination, in addition to any payments to which the Employee is entitled under the Company's severance pay plan, twelve (12) months of base salary at the Employee's annual base salary level in effect at the time of such termination or immediately prior to the salary reduction that serves as the basis for termination for Good Reason. Employee will also be entitled to twelve (12) months of health benefits continuation and outplacement assistance for a period not to exceed twelve (12) months.  Such base salary amount shall be paid by the Company to the Employee in one lump sum payable within thirty (30) days after the Employee's termination or resignation hereunder.  Solely for purposes of this Agreement, "Cause" shall mean (i) a conviction of a felony, a crime of moral turpitude or fraud, (ii) the Employee's willful and continuous engagement in conduct which is demonstrably and materially injurious to the Company, or (iii) the willful and continued refusal by the Employee to perform the duties of his or her position in a reasonable manner for thirty (30) days after written notice is given to the Employee by the Company specifying in reasonable detail the nature of the deficiency in the Employee's performance.  Solely for purposes of this Agreement, termination for "Good Reason" shall mean termination of employment by the Employee within ninety (90) days after (i) being demoted, or (ii) being given notice of a reduction in his or her annual base salary (other than a reduction of not more than 10% applicable to all senior officers of the Company).

2.     While the Employee is employed by the Company and for a period of 12 months after date of Employee's termination of employment with Company for any reason, the Employee shall not (i) directly or indirectly engage, whether as an employee, consultant, partner, owner, agent, stockholder, officer, director or otherwise, alone or in association with any other person or entity, that is a direct competitor of the Company in (A) the energy services industry, specifically project development, engineering, construction, operation and maintenance, of central power and/or thermal projects which are substantially similar to the size and type of projects being operated, maintained, developed, engineered or constructed by the Company during the two business quarters prior to the termination of the Employee's employment (developing and operating private power, cogeneration and central plant facilities) in the continental United States, or in markets and/or regions in which the Company was conducting

such business at the time of the termination of Employee's employment, or (B) any business activity that directly competes with any existing project of the Company or proposed project on which the Company initiated any business activity during the course of his or her employment (for purposes of this subsection (i) employment or engagement by a customer, or prospective customer at the time of the Employee's termination, of the Company to provide or manage services that are provided by the Company shall be deemed to violate this subsection (i)); (ii) directly or indirectly on his or her own behalf or on behalf of any other person or entity contact (A) any customer, or prospective customer at the time of the Employee's termination, of the Company with whom he or she had contact while employed by the Company, for the purpose of soliciting the purchase of any product or service that competes with any product or service offered by the Company or which was considered to be offered by the Company while the Employee was employed by the Company; (iii) take away or interfere, or attempt to interfere, with any custom, trade or existing contractual relations of the Company, including any business project or any contemplated business project which representatives of the Company have discussed with any potential participant in such project at the time the Employee's termination; or (iv) directly or indirectly on his or her own behalf or on behalf of any other person or entity solicit or induce, or cause any other person or entity to solicit or induce, or attempt to induce, any employee to leave the employ of or engagement by the Company or its successors, assigns, or affiliates, or to violate the terms of their contracts with the Company. Employee may purchase or otherwise acquire up to (but not more than) 1% of any class of securities of any enterprise (but without otherwise participating in the activities of such enterprise) if such securities are listed on any national securities exchange or have been registered under Section 12(g) of the Securities Exchange Act of 1934.

3.      The Company may terminate this Agreement by giving 12 months' prior written notice to the Employee; provided that all provisions of this Agreement shall apply if any event specified in sections 1 or 2 occurs prior to the expiration of such 12 month period.

4.      The provisions of this Agreement are severable. To the extent that any provision of this Agreement is deemed unenforceable in any court of law the parties intend that such provision be construed by such court in a manner to make it enforceable. The existence of any claim or cause of action against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to enforcement by the Company of this Agreement.

5.      The Employee acknowledges and agrees that: (i) this Agreement is necessary for the protection of the legitimate business interests of the Company; (ii) the restrictions contained in this Agreement are reasonable; (iii) the Employee has no intention of competing with the Company within the limitations set forth above; (iv) the Employee acknowledges and warrants that Employee believes that Employee will be fully able to earn an adequate livelihood for Employee and Employee's dependents if the covenant not to compete contained in this Agreement is enforced against the Employee; and (v) the Employee has received adequate and valuable consideration for entering into this Agreement.

6.      The Employee stipulates and agrees that any breach of this Agreement by the Employee will result in immediate and irreparable harm to the Company, the amount of which will be extremely difficult to ascertain, and that the Company could not be reasonably or adequately compensated by damages in an action at law. For these reasons, the Company shall have the right, without objection from the Employee, to obtain such preliminary, temporary or permanent mandatory or restraining injunctions, orders or decrees as may be necessary to protect the Company against, or on account of, any breach by the Employee of the provisions of Section

2 hereof. In the event the Company obtains any such injunction, order, decree or other relief, in law or in equity, (i) the duration of any violation of Section 2 shall be added to the 12-month restricted period specified in Section 2, and (ii) the Employee shall be responsible for reimbursing the Company for all costs associated with obtaining the relief, including reasonable attorneys' fees and expenses and costs of suit. Such right to equitable relief is in addition to the remedies the Company may have to protect its rights at law, in equity or otherwise.

7.     This Agreement (including the covenant not to compete contained in Section 2) shall be binding upon and inure to the benefit of the successors and assigns of the Company.

8.     This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. For the purpose of any suit, action or proceeding arising out of or relating to this Agreement, Employee irrevocably consents and submits to the jurisdiction and venue of any state or federal court located in Allegheny County, Pennsylvania. Employee agrees that service of the summons and complaint and all other process which may be served in any such suit, action or proceeding may be effected by mailing by registered mail a copy of such process to Employee at the addresses set forth below. Employee irrevocably waives any objection which they may now or hereafter have to the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such court has been brought in an inconvenient forum and agrees that service of process in accordance with this Section will be deemed in every respect effective and valid personal service of process upon Employee. Nothing in this Agreement will be construed to prohibit service of process by any other method permitted by law. The provisions of this Section will not limit or otherwise affect the right of the Company to institute and conduct an action in any other appropriate manner, jurisdiction or court. The Employee agrees that final judgment in such suit, action or proceeding will be conclusive and may be enforced in any other jurisdiction by suit on the judgment or in any other manner provided by law.

9.     This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written. This Agreement may not be changed, amended, or modified, except by a written instrument signed by the parties.


IN WITNESS WHEREOF, the Company has caused this Agreement to be executed by its officers thereunto duly authorized, and the Employee has hereunto set his hand, all as of the day and year first above written.

ATTEST:                                    EQUITABLE RESOURCES, INC.

_Carolann Babush_        By: _Charlene Petrelli_

WITNESS:                                 EMPLOYEE:

# EXHIBIT C



N○RESCO
An EQUITABLE RESOURCES Company

One Research Drive • Suite 400C • Westborough, MA 01581 • 508.614.1000 • 508.836.9988 fax • www.noresco.com

December 15, 2003

Stephen H. Clevett
5 Sterling Way
Ashland, MA 01721

Dear Steve:

As you know, your position with NORESCO was going to be eliminated in the near future, which would have resulted in the termination of your employment at that time. In the meantime, however, we have learned that you have been engaging in misconduct, which, among other things, violates material provisions of the Noncompete Agreement between you and Equitable Resources, Inc. and also breaches the duty of loyalty owed to the Company. Hence, be advised that your employment with NORESCO is being terminated for cause as defined in paragraph 1 of the Noncompete Agreement, effective today.

In light of the reasons for and circumstances surrounding your termination, be advised that your stock options terminate as of today.

You will receive under separate cover information regarding your rights under COBRA to continue participating in the Company's health insurance program at your own expense.

If you should have any questions, please direct them to Maryann Keaveney, Director of Human Resources. She may be reached at (508) 614-1001.

Very truly yours,

J. E. O'Brien
President

PGHLIB-1262204-KennethG.Maltem
December 15, 2003  11:00 AM

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

05 - 40020

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

STEPHEN H. CLEVETT,

## DEFENDANTS

EQUITABLE RESOURCES, INC. and JOSEPH E. O'BRIEN

**(b)** County of Residence of First Listed Plaintiff **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed **Allegheny (Pittsburgh, PA)**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Timothy Wickstrom, Tashjian, Simsarian & Wickstrom
370 Main St., Worcester, MA 01608  508.756.1578
Thomas F. Holt, Jr., Kirkpatrick & Lockhart
75 State St., Boston, MA 02109  617.261.3100

Attorneys (If Known)
Terence P. McCourt, Laurie J. Hurtt
Greenberg Traurig, LLP
One International Pl, Boston, MA 02110
617.310.6000

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgement | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | Product Liability | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | Product Liability | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | Determination Under Equal Access to |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | ☐ 790 Other Labor Litigation | or Defendant) | Justice |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | 26 USC 7609 | ☐ 890 Other Statutory Actions |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Defendants remove this action from State Court because there is diversity of citizenship pursuant to U.S.C. Sec. 1332 and the amount sought by Plaintiff exceeds $75,000

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ exceeds $195,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)___Stephen H. Clevett v. Equitable Resources, Inc.___

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

[ ]  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

[ ]  II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,          *Also complete AO 120 or AO 121
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

[XX] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

[ ]  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

[ ]  V.    150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES [ ]      NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

                                                    YES [ ]      NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES [ ]      NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES [ ]      NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? -  (See Local Rule 40.1(d)).

                                                    YES [ ]      NO [X]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,  residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [X]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                                    YES [ ]      NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Terence P. McCourt, Esq., Laurie J. Hurtt, Esq.

ADDRESS  Greenberg Traurig, LLP, One International Place, 20th Fl. Boston, MA 02110

TELEPHONE NO.  617.310.6000

(Coversheetlocal.wpd - 10/17/02)