UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN H. CLEVETT,<br><br>    Plaintiff,<br><br>v.<br><br>EQUITABLE RESOURCES, INC.,<br>and JOSEPH E. O'BRIEN,<br><br>    Defendants. | Civil Action No.<br><br>**05-40020** |

AFFIDAVIT OF JOSEPH E. O'BRIEN IN SUPPORT OF
NOTICE OF REMOVAL

I, Joseph E. O'Brien, hereby testify as follows:

1. I have personal knowledge concerning the matters testified to herein.

2. I am the President of NORESCO, LLC, a wholly owned subsidiary of Petitioner Equitable Resources, Inc. ("Equitable"), and I am a Vice President of Equitable. NORESCO provides comprehensive energy efficiency and infrastructure services to federal, state and local governmental entities, prisons, hospitals and universities.

3. Stephen H. Clevett ("Clevett") was hired by NORESCO in approximately August of 2001 as a Vice President reporting to me. In early 2002, Clevett was promoted to the position of Sr. Vice President-Energy Infrastructure, reporting to me. He served in that position until his employment was terminated for cause in December of 2003.

4. By the fall of 2003, it was clear to me, principally based on sales figures, that the Energy Infrastructure Group was not meeting its business goals. In fact, the only transactions that had been closed by Clevett were a project for the City of Colton California and a small operations and maintenance agreement for a plant in Rhode Island. Based on a cost/benefit analysis, the management of Equitable and I determined that the Energy Infrastructure Group should be scaled back and reorganized. I informed Clevett when certain employees in the group would be re-assigned or laid off effective December of 2003. I informed Clevett in November of 2003 that his services would no longer be needed after January 2004, and that for the remainder of his employment, he was to focus on transition matters.

5. In the early part of December 2003, I was informed by Ken Mattern, NORESCO's In-House Chief Attorney (also known as Director of Legal Services), that Clevett had made statements in the presence of other employees about his efforts to get some of NORESCO's clients to terminate their contracts with NORESCO for the purpose of taking that business away from NORESCO. I was also informed that Clevett had solicited at least one NORESCO employee to join him as an employee once he had secured a position with another company. I felt that these types of activities were disloyal to NORESCO and Equitable, and in violation of Clevett's non-compete agreement.

6. In this same December 2003 timeframe, certain e-mail messages that Clevett had sent and/or received on the NORESCO computer system were brought to my attention. A review of these e-mail messages confirmed that Clevett was engaging in conduct that could be injurious to NORESCO and Equitable; that was disloyal to

NORESCO and Equitable; that was contrary to Clevett's contractual obligations regarding non-competition; and that constituted breaches of his basic obligation to comply with Company policies.

7. I further consulted with NORESCO's counsel, and with Equitable's General Counsel in Pittsburgh for advice as to how NORESCO should proceed in light of these circumstances. Based upon advice received, it was determined to terminate Clevett's employment.

8. On the morning of December 9, 2003, I met with Clevett and informed him that his employment was terminated immediately because of the discovery of activities that he was engaging in that were harmful to the company. I asked Clevett to gather his personal belongings and to depart the building at that time.

9. Shortly after Clevett's employment was terminated, a representative from the City of Colton indicated to me that it would like Clevett to have a continuing role in that business relationship. While I did not think that Clevett was suitable to continue as an officer of NORESCO, I contacted Clevett to explore a limited role involving a possible consulting arrangement with respect to the potential Colton opportunity. I later determined that such a relationship would not be productive for NORESCO, because I concluded that Clevett's continued involvement was sought by Colton in order to cultivate a relationship between Colton and a third party, not necessarily NORESCO. Moreover, during this timeframe, Clevett traveled to California to meet with Colton representatives and others without my participation, and absent my final approval.

9. All of my communications and actions with respect to Clevett, including those actions involving his termination and involving his potential role as a consultant,

3

were taken by me as Clevett's supervisor and as an officer of NORESCO and Equitable. Clevett and I always had a professional working relationship—I was never aware of any ill will or hostility between us. I have not benefited, financially or in any other personal manner, from Clevett's termination or from the failure of NORESCO to enter into a consulting arrangement with Clevett.

Signed under the pains and penalties of perjury this 27th day of January 2005.

Joseph E. O'Brien    1-28-05